ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| LYDIA PRINCIPE RODRÍGUEZ<br><br>Recurrido<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrente | TA2025RA00105 | *Revisión Judicial* procedente de la Junta de Apelaciones de la CFSE<br><br>Caso Núm.: JA-23-24<br><br>Sobre: Reclasificación |

Panel integrado por su presidenta la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

La Corporación del Fondo del Seguro del Estado (CFSE o recurrente) nos solicita que revisemos la *Resolución Sumaria* que emitió la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado (Junta de Apelaciones), el 22 de mayo de 2025. Mediante esta, el referido foro ordenó a CFSE reclasificar a la señora Lydia Príncipe Rodríguez (señora Príncipe o recurrida) en el puesto de Supervisor de Intervenciones II con efecto retroactivo al 26 de octubre de 2016.

Por los fundamentos que expondremos a continuación, se *modifica* la resolución recurrida.

## I.

El 25 de octubre de 2016, la señora Príncipe presentó ante la CFSE una carta en la que solicitaba la reclasificación de su puesto a Supervisora de Intervenciones II, conforme lo establecido en el Reglamento de Personal de la CFSE número

6226.[1] Allí, la señora Príncipe explicó que se desempeñaba como Supervisora de Intervenciones I, en el Área de Seguros e Intervención en la Oficina Regional de San Juan, pero lo que procedía era una reclasificación del puesto del Nivel II de la clase. No obstante, el 10 de mayo de 2017, la CFSE le respondió a la señora Príncipe que bajo la Ley Núm. 66-2014, *infra,* la Ley Núm. 3-2017, *infra,* y la Carta Circular 144-17 de la Oficina de Gerencia y Presupuesto (OGP) no se podía conceder aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de la rama ejecutiva.[2]

Así las cosas, el 10 de diciembre de 2021, la recurrida notificó a la Directora Asociada de Recursos Humanos de la CFSE que la Ley Núm. 3-2017 venció el 1 de julio de 2021. Por lo tanto, solicitó ser evaluada nuevamente para ser reclasificada a Supervisora de Intervenciones II con efectividad desde el 26 de octubre de 2016. El 28 de diciembre de 2024, la CFSE presentó su *Contestación a la Apelación.*[3] El 29 de enero de 2025, la CFSE notificó la *Evaluación de Solicitud de Reclasificación de Puesto* de 14 de noviembre de 2023, el cual este recomendó la reclasificación de la recurrida al puesto de Supervisor de Intervenciones II con efecto retroactivo, por cumplir con todos los requisitos. Sin embargo, dado a que la CFSE no había concretado la referida reclasificación, la señora Príncipe recurrió ante la Junta de Apelaciones.

El 6 de marzo de 2025, la recurrida presentó *Solicitud de Resolución Sumaria* en la Junta de Apelaciones.[4] El 17 de marzo de 2025, la Junta de Apelaciones tomó conocimiento de la

---

[1] Entrada 4, *Apéndice 3* de SUMAC PI.
[2] Íd.
[3] Entrada 3, *Apéndice 2* de SUMAC PI.
[4] Íd.

presentación de la *Resolución Sumaria* y le concedió CFSE veinte (20) días para exponer su posición, lo cual la CFSE incumplió. Así pues, el 22 de mayo de 2025, la Junta de Apelaciones notificó y archivó la *Resolución Sumaria* mediante la cual declaró Ha Lugar la Apelación presentada por la recurrida. Ante ello, el 11 de junio de 2025, la CFSE presentó *Moción de Reconsideración* por entender que la resolución antes mencionada debe ser modificada de manera parcial, a los fines de que no se reconozca la retroactividad de la reclasificación de la recurrida.[5]

Inconforme con el proceder de la Junta de Apelaciones, el recurrente presentó recurso de *Revisión Judicial* en el que alega el siguiente error:

> Erró la Junta de Apelaciones al determinar que procede la transacción de personal conocida como reclasificación de forma retroactiva en cuanto a la retribución de la recurrida. La Junta de Apelaciones actuó ultra vires al disponer un remedio económico retroactiva en contravención a las disposiciones a las disposiciones claras y expresas de la Ley 66-2014 y la Ley 3-2017, que prohíben expresamente este tipo de reclamaciones.

Por su parte, la recurrida presentó su *Oposición a la Revisión Judicial*, en la cual sostuvo, entre otras cosas, que dentro de los aumentos de beneficio económico o compensación monetaria extraordinaria que prohíbe la Ley Núm. 66-2014, no están contempladas las reclasificaciones. Asimismo, alegó que la norma que procede para la reclasificación de esta es la Constitución del Estado Libre Asociado de Puerto Rico en su Artículo II, Sección 16, que reconoce el derecho de todo trabajador a recibir igual paga por igual trabajo, lo cual se materializa a través de la correcta clasificación.

---

[5] Entrada 7, *Apéndice 6* de SUMAC PI.

## II.

## A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.,* establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. La revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. La LPAU, *supra,* es el estatuto que delimita el alcance de la revisión judicial de las decisiones administrativas ante el Tribunal de Apelaciones. Sec. 4.1 de la LPAU, 3 LPRA sec. 9671. Es decir, que únicamente puede presentarse un recurso de revisión judicial ante este Tribunal cuando exista una determinación final de una agencia administrativa. Íd.; Oficina de Asuntos Monopolísticos del Departamento de Justicia y otro v. Abarca Health, LLC, 2025 TSPR 23, 215 DPR __ (2025).

Allí se establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor con las leyes y la jurisprudencia aplicable, la revisión judicial consiste en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y, si la misma es legal y razonable.

Del mismo modo, es norma reiterada que los procedimientos y las decisiones de los organismos administrativos están cobijados por una presunción de regularidad y corrección. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la LPAU, 3 LPRA sec. 9675. Por ello, el tribunal revisor podrá intervenir con los foros administrativos cuando la decisión adoptada no está basada

en evidencia sustancial, o ha errado en la aplicación de la ley, o cuando la actuación es arbitraria, irrazonable, ilegal o afecta derechos fundamentales. Jusino Rodríguez v. Junta de Retiro, 2024 TSPR 138, 215 DPR ___ (2024); Voili Voila Corp. Et Al v. Mun. Guaynabo, 213 DPR 743, 754 (2024); Caribbean Communication v. Pol. de P.R., 176 DPR 978, 1006 (2009); JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009).

Conforme a ello, la norma general es que las decisiones de las agencias administrativas deben ser consideradas con cierta deferencia por los tribunales apelativos, por razón de la experiencia y conocimiento especializado de éstas respecto a las facultades que se les han delegado. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra; Rolón Martínez v. Supte Policía, 201 DPR 26, 135 (2018); JP, Plaza Santa Isabel v. Cordero Badillo, supra, pág. 186; Borschow Hosp. v. Jta. de Planificación, 177 DPR 545, 566 (2009).

Sin embargo, la deferencia hacia las decisiones administrativas no es automática. En Vázquez, Torres vs. Consejo Titulares et al, 2025 TSPR 56, 215 DPR ___ (2025) se estableció que:

> [l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

**B.**

La Ley Núm. 66-2014, según enmendada, 3 LPRA sec. 9101 et seq., mejor conocida como la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico* se creó con los fines de declarar un estado de

emergencia fiscal. Allí, se adoptó un plan para manejar las consecuencias de la crisis fiscal y económica, y de la degradación del crédito de Puerto Rico. El objetivo del estatuto fue dar continuidad a la gestión pública y a la prestación de servicios esenciales, sin recurrir al despido de empleados públicos de carrera. Véase, Art. 2 de la Ley Núm. 66-2014, 3 LPRA sec. 9101. Con esa finalidad, esta legislación incluyó, entre otras cosas, una serie de disposiciones como parte de las medidas de reducción de gastos en la rama ejecutiva.

Relativo a la controversia que nos ocupa, el Artículo 11 de la Ley Núm. 66-2014 dispone que durante su vigencia no se concederán aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de la Rama Ejecutiva. 3 LPRA sec. 9117. En síntesis, el mismo estatuto establece que se considerará como aumento en beneficios económicos lo siguiente:

> (i) Aumentos de sueldo por años de servicio, servicio meritorio, retribución adicional por habilidades o competencia, y aumentos generales.
> (ii) Aumentos en aportaciones patronales para beneficios marginales, tales como plan médico, seguros de vida y otros seguros.
> (iii) Aumentos en aportaciones a planes de retiro más allá de las establecidas en ley para los sistemas de retiro gubernamentales.
> (iv) Aumentos en Bonos de Navidad, Bonos de Verano, o cualesquiera otras bonificaciones.
> (v) Aumentos por ascenso o traslados, excepto que tal ascenso o traslado resulte en un ahorro neto para la Entidad de la Rama Ejecutiva, eliminando la necesidad de reclutamiento de un empleado neto adicional; siempre que, dicho reclutamiento hubiese cumplido con los requisitos para ocupar puestos establecidos en el Artículo 9 de este Capítulo.
> (vi) Aumentos por reinstalación.
> (vii) Pagos de diferencial en salario por condiciones extraordinarias o por interinatos. . . . El Art. 11(b) de la Ley Núm. 66-2014, 3 LPRA sec. 9117.

Mientras que las compensaciones monetarias extraordinarias son, entre otras cosas, la liquidación de licencia de vacaciones y enfermedad en exceso en caso de separación del empleado del servicio público, bonos de navidad en exceso de seiscientos (600) dólares. Art. 11(c) de la Ley Núm. 66-2014.

Ahora bien, el Artículo 31 de esta ley dispone que con excepción a lo dispuesto en el Artículo 11(c) sobre liquidaciones de la licencia de vacaciones o enfermedad y a cualquier desembolso de dinero o pago de deuda que se tenga pendiente con el Departamento de Educación, "**cualquier compromiso u obligación que haya sido temporalmente suspendido mientras esté en vigor esta Ley no podrá ser reclamado retroactivamente, ni configurará crédito alguno, una vez ésta pierda su vigencia".** (énfasis nuestro). 3 LPRA sec. 9151.

Asimismo, la Ley Núm. 3-2017, según enmendada, 3 LPRA sec. 9391 *et seq.,* mejor conocida como la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico,* se creó con el fin de tomar medidas temporeras de emergencia necesarias para lograr que el Gobierno de Puerto Rico siga operando y ofreciendo servicios esenciales a la ciudadanía. Igual a la Ley Núm. 66-2014, el Artículo 23 de la Ley Núm. 3-2017 dispone que "cualquier compromiso u obligación que haya sido temporalmente suspendido mientras esté en vigor esta Ley no podrá ser reclamado retroactivamente, ni configurará crédito alguno, una vez ésta pierda su vigencia". 3 LPRA sec. 9413. Ahora bien, la referida Ley tuvo su vigencia hasta el 1ro de julio de 2021. Art. 4 de la Ley Núm. 3-2017, 3 LPRA sec. 9394.

### III.

La CFSE plantea como único error que la Junta de Apelaciones incidió al determinar que procede la reclasificación de forma retroactiva en cuanto a la retribución de la recurrida, en contravención a las disposiciones de la Ley Núm. 66-2014 y la Ley Núm. 3-2017, que prohíben expresamente este tipo de reclamaciones.

De los hechos aquí reseñados surge que, el 25 de octubre de 2016, la señora Príncipe solicitó que se realizara una reclasificación de su puesto a nivel II, en cumplimiento con el Reglamento del Personal de la CFSP. No obstante, el 10 de mayo de 2017, la CFSP le respondió que al amparo de la Ley Núm. 66-2014, la Ley Núm. 3-2017 y la Carta Circular 144-17, tal solicitud no podía ser posible por la prohibición contenida en estos estatutos en cuanto a conceder aumentos en beneficios económicos y compensación monetaria extraordinaria a los empleados de la rama ejecutiva. Así las cosas, el 10 de diciembre de 2021, la recurrida notificó a la Directora Asociada de Recursos Humanos, que la Ley Núm. 3-2017 venció el 1ro de julio de 2021, lo cual solicitó nuevamente ser evaluada para el puesto con efectividad desde el 26 de octubre de 2016. De lo anterior, tanto como el foro de la CFSP y la Junta de Apelaciones resolvieron que procede la reclasificación de forma retroactiva.

La recurrida en su escrito en oposición al recurso presentado, alega que la Ley Núm. 66-2014 y la Ley Núm. 3-2017 no le aplica porque su caso es sobre una reclasificación y no un aumento o compensación monetaria extraordinaria. No obstante, según vimos, la reclasificación fue denegada el 10 de mayo de 2017 bajo estas leyes. Incluso, la misma recurrida acepta que esta volvió a solicitar la reclasificación cuando venció la Ley Núm. 3-2017 en el año 2021. De todo lo anterior, es evidente que la razón por la que la señora Príncipe no pudo ser reclasificada en el nivel II, se debe a las medidas temporeras de emergencia que contenían estas leyes.

Siendo así, la recurrida estaba impedida de reclamar cualquier retribución desde el 2014 al 2021, ya que se encontraban vigentes las referidas leyes de emergencia fiscal.

Esto, ya que ambos estatutos prohíben la retroactividad de cualquier compromiso u obligación económica suspendida desde y durante la vigencia del estatuto. Véase, Art. 31 de la Ley Núm. 66-2014; Art. 23 de la Ley Núm. 3-2017. Así como, el aumento o la compensación monetaria no podría representar un crédito cuando la ley perdiera su vigencia, es decir, hasta el 1 de julio de 2021. Art. 4 de la Ley Núm. 3-2017.

Somos de la opinión que, permitir lo contrario resultaría un total contrasentido con el lenguaje claro e inequívoco de la ley. Recordemos que, como tribunal nuestra obligación fundamental es cumplir con efectividad la intención legislativa con el fin de alcanzar el propósito que persigue la ley.

Así pues, no procede la aplicación retroactiva de la reclasificación de la recurrida durante la vigencia de las referidas leyes de emergencia fiscal. Además, dado que el Plan Fiscal 2022, estableció el congelamiento en la nómina de la CFSE hasta finales del año fiscal 2023, procede la reclasificación de forma retroactiva posterior a este plan.

**IV.**

Por los fundamentos expuestos, se modifica la resolución recurrida únicamente en el aspecto a la retribución de la recurrida de forma retroactiva desde el 26 de octubre de 2016.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones. La Juez Lotti Rodríguez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones